UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JOHN HERBERT TALLEY,               )
                                  )
        *Petitioner*,              )
v.                                 )        Nos. 1:00-cv-74 / 1:94-cr-118
                                  )        *Edgar*
UNITED STATES OF AMERICA,          )
                                  )
        *Respondent*.              )

**<u>MEMORANDUM</u>**

Federal prisoner John Herbert Talley ("Talley") moves for post-conviction relief pursuant

to 28 U.S.C. § 2255. His attorneys have filed three amendments or supplements to the § 2255

motion. Talley acting *pro se* has submitted one amendment or supplement to the § 2255 motion.

In his § 2255 motion as amended and supplemented, Talley claims he was deprived of his

right to effective assistance of counsel in violation of the Sixth Amendment to the United States

Constitution at trial and on direct appeal. He further claims that his sentence of life imprisonment

imposed on Count 1 of the indictment under 21 U.S.C. § 841(b)(1)(A) was unlawfully enhanced by

prior convictions for felony drug offenses.

Talley also asserts a claim for relief based upon *Apprendi v. New Jersey*, 530 U.S. 466

(2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. 220

(2005). Talley argues that his judgment of conviction and sentence are unconstitutional because

Count 1 of the indictment did not allege a specific quantity of cocaine base (crack) and the jury at

trial did not make a factual determination regarding the quantity of cocaine base (crack) attributable

to Talley on Count 1 using the standard of proof beyond a reasonable doubt. Talley contends that the District Court erred at sentencing by determining the quantity of crack cocaine attributable to Talley by a preponderance of the evidence. In sum, Talley argues that the Court should retroactively apply *Apprendi*, *Blakely*, and *Booker* to grant him post-conviction relief under 28 U.S.C. § 2255.

The United States opposes the motion as amended. After reviewing the record, the Court concludes that Talley's § 2255 motion as amended shall be **DENIED**. The record conclusively shows that Talley is not entitled to relief under § 2255. There is no need for an evidentiary hearing.

## I.     Standard of Review

A federal prisoner may file a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States.

To warrant relief under § 2255 based on an alleged constitutional error, Talley bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To warrant relief under § 2255 based on an alleged non-constitutional error, Talley bears the burden of establishing that there was a fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.

1990).

A § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady,* 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996); *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Talley cannot use a § 2255 motion to relitigate the same issues that were fully, fairly presented and decided in his direct appeal to the Court of Appeals for the Sixth Circuit in *United States v. Pruitt*, 156 F.3d 638 (6th Cir. 1998), *cert. denied*, *Talley v. United States*, 526 U.S. 1012 (1999). Issues which are fully, fairly presented and considered on direct appeal may not be relitigated in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996).

## II.    Facts

The Court finds that Talley has not met this burden of showing that he is entitled to post-conviction relief under 28 U.S.C. § 2255. Talley has not established an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. Moreover, Talley has not established that there was a fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of his right to due process of law. Because of the myriad of claims and issues raised by Talley in this § 2255 proceeding and to facilitate the Court's analysis, it is necessary to discuss in detail the facts and procedural history in Talley's underlying criminal case.

In 1993, pursuant to an investigation launched by the Federal Bureau of Investigation, law enforcement officers learned that Cory Evans and several of his associates including Talley, Tobias Pruitt, Michael Clay, and Kelcey Kendrick ("Kendrick") were distributing cocaine base (crack) in the Chattanooga, Tennessee area. The officers developed a confidential informant who had been purchasing large quantities of crack cocaine from this group of persons. Sufficient evidence was accumulated for this District Court to authorize electronic surveillance (wiretaps) on three telephones. The investigation yielded evidence of Talley's active participation in a conspiracy to engage in crack cocaine trafficking from recorded telephone conversations derived from the wiretaps, controlled purchases of crack cocaine, search warrants, and the arrests of coconspirators who possessed controlled substances.

On December 6, 1994, a federal grand jury in Chattanooga returned a 33-count indictment charging Talley and thirteen other codefendants with drug trafficking offenses, firearms violations, and related charges. All defendants including Talley were charged in Count 1 with conspiracy to possess with intent to distribute cocaine base (crack) from at least October 1992 to on or about December 20, 1993, in violation of 21 U.S.C. § 846. All defendants including Talley were charged in Count 2 with conspiracy under 18 U.S.C. § 371 to use and carry firearms during and in relation to the drug conspiracy alleged in Count 1in violation of 18 U.S.C. § 924(c)(1). In Counts 20 and 21, Talley was charged with using a communication facility (telephone) to facilitate a drug transaction in violation of 21 U.S.C. § 843(b).

The charges against Talley proceeded to a jury trial on September 19, 1995. Talley was represented at trial by his retained attorney, Myron McClary ("McClary"). McClary was admitted to practice law in the United States District Court for the Eastern District of Tennessee and in the

4

State of Tennessee.  McClary was assisted at trial by attorney Jeffrey Boehm.

Immediately prior to the start of the trial on September 19,1995, the fact that McClary's Tennessee license to practice law had recently been temporarily suspended by the Supreme Court of Tennessee and the Tennessee Board of Professional Responsibility was discussed by the attorneys and the undersigned United States District Judge in Talley's presence in open court.  On September 8, 1995, the Supreme Court of Tennessee entered an order of temporary suspension.  It temporarily suspended McClary from the practice of law in the State of Tennessee pursuant to Section 4.3 of Rule 9 of the Rules of the Tennessee Supreme Court.[1]  The order of temporary suspension did not prohibit or restrict McClary from continuing to represent Talley in the federal trial.  Section 4.3 of Rule 9 of the Rules of the Tennessee Supreme provided in pertinent part: "Any order of temporary suspension issued under this rule shall preclude the attorney from accepting any new cases but shall not preclude such attorney from continuing to represent existing clients during the first 30 days after issuance of such temporary order ...."

The trial transcript shows that the federal prosecutor, Assistant United States Attorney Greg Sullivan, raised the issue of the temporary suspension order to make certain that this Court and Talley were fully aware of it.  The undersigned District Judge said that he was aware of the matter but it did not affect McClary's ability to represent Talley in the federal trial because the temporary suspension did not take full effect until thirty days had elapsed.  There was nothing in the temporary suspension order that prevented McClary from representing Talley at the federal trial in mid-September 1995. After a short discussion, the prosecutor and McClary agreed with the District

---

[1]  A copy of the order of temporary suspension is attached as an exhibit to the government's response to Talley's § 2255 motion.

Judge's assessment that McClary could continue to represent Talley at the trial. After listening to this discussion, Talley did not raise any objection to his being represented at trial by McClary. In the absence of an objection from Talley, the trial then proceeded with Talley being represented by McClary and co-counsel Boehm.

The District Court for the Eastern District of Tennessee has its own local rules and procedures governing the admission and discipline of attorneys. E.D.TN. LR 83.5 - 83.7. Any disciplinary action taken against McClary by the Supreme Court of Tennessee and the Tennessee Board of Professional Responsibility would not automatically and immediately result in precisely the same disciplinary action being taken by the United States District Court for the Eastern District of Tennessee against McClary concerning his admission to practice law in this United States District Court. In sum, at the time of Talley's federal trial, McClary was admitted to practice law in the United States District Court for the Eastern District of Tennessee.

The following witnesses testified at trial. Jeff Baker ("Baker"), a narcotics detective with the Sheriff's Department of Hamilton County, Tennessee, testified that on January 12, 1993, Baker working in an undercover capacity went to Talley's residence with a confidential informant to purchase crack cocaine. Baker saw Talley in possession of crack cocaine. Based on his investigation and observations, Baker obtained a search warrant for Talley's residence later that same day. When the search warrant was executed, the police found Talley in his bedroom with cocaine residue on a mirror. Baker recovered 0.6 grams of cocaine powder from three plastic bags hidden in a couch cushion and 0.9 grams of crack cocaine packaged inside a fourth plastic bag. The police seized three plastic bags containing a total of 2.6 grams of marijuana found inside a closet.

Antoneia Summerrow ("Summerrow"), a cooperating co-defendant, testified on behalf of

the government pursuant to a plea agreement. Summerrow testified that had known Talley for over ten years. Summerrow described Talley as being a father figure to his friend, co-defendant Cory Evans. Beginning in 1992, Summerrow bought and sold crack cocaine with Talley. Summerrow testified that he purchased crack cocaine from Talley approximately 13-18 times. From October 1993 through December 1994, Summerrow sold crack cocaine to Talley in quantities ranging from one-sixteenth of an ounce to one-half ounce. Summerrow testified that Talley helped him more than 25 times to obtain crack cocaine from others ranging from one quarter ounce to one ounce quantities.

Summerrow further testified that Talley had similar crack cocaine dealings with Summerrow's associates, including co-defendants Cory Evans and Kendrick. Summerrow described Talley's relationship to the group as a "coach" or a "teacher" who schooled the younger co-defendants in the business of distributing and trafficking in crack cocaine. For example, Talley told the group that they could avoid arrest if they were not flashy about spending their illegal drug proceeds, were careful about not openly discussing drug business over the telephone, and kept few other people aware of the details of their drug trafficking.

Co-defendant Marchshella Sims ("Sims"), a cooperating witness for the government, testified that she knew Talley personally, and that Sims worked for Talley at his restaurant in August and September of 1993. While working at the restaurant, Sims observed Talley selling drugs from the restaurant on a daily basis. Sims, an admitted crack cocaine addict, obtained crack cocaine from Talley through her boyfriend, co-defendant Torran Evans, on at least a weekly basis from 1992 through 1994. Sims was aware that Torran Evans did jobs for Talley in order to obtain crack cocaine from Talley for himself. Sims observed Talley obtain drugs from co-defendant Cory Evans for distribution. Sims also overheard Talley instruct Cory Evans and other members of the

conspiracy to be careful in conducting their drug trafficking activities.

Co-defendant Torran Evans, a cooperating witness for the government, testified that he had known Talley for fifteen years and he had purchased crack cocaine and powder cocaine from Talley during that period of time. Torran Evans testified he was addicted to crack cocaine and he would obtain it, sometimes twice a day, from Talley. To obtain the crack cocaine, Torran Evans worked at Talley's restaurant and performed personal errands for Talley. Torran Evans observed Talley selling crack cocaine from the restaurant, and he also observed Talley obtaining crack cocaine from the other members of the drug distribution group including Cory Evans, Kendrick, and Summerrow. Torran Evans was present when Talley gave advice to and counseled the other members of the drug trafficking conspiracy.

Special Agent Roy Carroll testified that he searched Talley's residence on December 17, 1993, pursuant to the execution of a federal search warrant. Officers seized a cellular telephone, pager, ammunition, food stamps, and approximately $760.00 in cash.

FBI Special Agent Wayne Jackson ("Jackson") testified concerning the court-authorized electronic surveillance and telephone wiretaps. On November 23, 1993, Talley in a telephone conversation warned co-defendants Lafayette Faust ("Faust") and Kendrick of a suspicious vehicle that Talley had observed near his restaurant. Fearing the presence of police officers, Talley told Faust and Kendrick that they should not bring any drugs or other illegal items to Talley's restaurant. On December 4, 1993, Talley had a telephone conversation with Torran Evans concerning a crack cocaine transaction. On December 7, 1993, Talley was overheard in a telephone call passing a message to Cory Evans instructing Cory Evans and his associates not to drive such fancy, expensive automobiles since one of the members of the group had been stopped by the police while driving a

Cadillac. Talley also instructed a coconspirator to dispose of razor blades in his residence that might contain cocaine residue. This December 7, 1993, telephone call was the basis for the 21 U.S.C. § 843(b) offense charged in Count 20 of the indictment. Later on December 7, 1993, Talley had a different telephone conversation during which Talley instructed Cory Evans to be careful about discussing the drug business with other persons because Talley feared informants. This last telephone call is the basis for the 21 U.S.C. § 843(b) offense charged in Count 21.

Talley did not testify at trial. The only witness for the defense was Reverend Anthony Ray who was called primarily as a character witness. Reverend Ray testified that he had been in Talley's restaurant on several occasions and he never observed any indication of drug trafficking there. McClary advised the Court that some other witnesses that McClary intended to call to testify for the defense did not appear. (Trial Transcript, McClary at p. 298).

Talley was found guilty and convicted on Counts 1, 20, and 21. The jury acquitted Talley on Count 2. At sentencing, this Court determined by a preponderance of the evidence that in excess of fifty grams of crack cocaine were attributable to Talley. Since Talley had trafficked in excess of fifty grams of crack cocaine and he had previously been convicted of two or more felony drug offenses, this Court sentenced him to life imprisonment on Count 1 as required by 21 U.S.C. § 841(b)(1)(A). Talley was sentenced to 48-month concurrent terms of imprisonment on each of Counts 20 and 21. The judgment of conviction was entered December 12, 1995.

Talley took a direct appeal to the Court of Appeals for the Sixth Circuit and he was represented by a different attorney. On appeal, Talley raised the following issues: (1) Aggregation of drug quantities attributed to Talley; (2) Disparate sentencing treatment of cocaine base "crack" and powder cocaine; (3) Unequal treatment of violent versus non-violent offenders under 21 U.S.C.

§ 841(b)(1)(A); (4) Mandatory life sentence under 21 U.S.C. § 841(b)(1)(A); (5) Double jeopardy for enhanced sentences based on prior convictions; (6) Ineffective assistance of counsel; (7) Whether the rule of lenity requires that Tennessee state law be applied. Talley argued that the uncorroborated testimony of his coconspirators was the only evidence in the record to support the District Court's attribution to Talley of more than fifty grams of crack cocaine for sentencing purposes and that Tennessee law does not permit the conviction of a criminal defendant based upon the uncorroborated testimony of a co-defendant. Talley argued that the District Court erred in including this amount of crack cocaine in determining his federal sentence; and (8) Whether the District Court's determination of the amount of crack cocaine attributable to Talley was supported by sufficient evidence. Talley argued that the District Court erred in relying on the testimony of his coconspirators.

The Sixth Circuit dismissed Talley's direct appeal and affirmed the district court's judgment of conviction. *Pruitt*, 156 F.3d 638. The Sixth Circuit declined to decide Talley's claim of ineffective assistance of counsel stating it that should first be raised by Talley in a proceeding under 28 U.S.C. § 2255 so that an adequate factual record may be developed. *Pruitt*, 156 F.3d at 646. On March 8, 1999, the Supreme Court denied Talley's petition for writ of certiorari. *Talley v. United States*, 526 U.S. 1012 (1999).

## III.  Claims of Ineffective Assistance of Counsel at Trial

Talley claims he was deprived of his Sixth Amendment right to effective assistance of counsel at trial and on his direct appeal to the Sixth Circuit. With regard to the trial, Talley asserts that McClary was ineffective in the following ways:

1. McClary did not conduct adequate trial preparation by failing to interview, subpoena, and

call potential defense witnesses to testify on behalf of Talley;

2. McClary failed to file pretrial motions to suppress evidence seized from Talley's residence during the execution of search warrants and the government's use of recorded telephone conversations obtained as a result of a court-authorized wiretaps;

3. In the absence of a viable defense, McClary failed to initiate plea bargaining;

4. McClary failed to conduct adequate cross-examination of government witnesses;

5. McClary failed to retain the services of an expert witness to refute the veracity or reliability of recorded telephone conversations introduced into evidence by the government at trial;

6. At the conclusion of the trial, McClary failed to raise the argument that the government had not proved on Count 1 anything more than a mere drug buyer-seller relationship between Talley and his alleged coconspirators;

7. McClary refused to allow Talley to testify at trial;

8. McClary did not submit requests for jury instructions; and

9. McClary did not have a valid license to practice law at the time he represented Talley.

## A.    *Strickland* Test

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have to right to assistance of counsel for his defense. Ineffective assistance of counsel in violation of the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000); *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

The Supreme Court in *Strickland* established a two-part test for deciding Sixth Amendment claims of ineffective assistance of counsel. First, Talley must establish that his attorney's performance was deficient. Second, Talley is required to demonstrate that counsel's deficient performance prejudiced his defense by depriving Talley of a fair proceeding. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Skaggs*, 235 F.3d at 267.

The first part of the *Strickland* test requires Talley to show that his attorney's representation was deficient in that it fell below an objective standard of reasonableness. Talley must show that his counsel made such serious errors that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline,* 319 F.3d at 819; *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995).

The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84; *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994). Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices

made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has duty to make a reasonable investigation under the circumstances or to make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Talley to show that his attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or renders the proceeding fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of Talley's counsel was so manifestly deficient and ineffective that defeat was snatched from the hands of probable victory. *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Talley must show there is a reasonable probability that, but for the errors and deficient performance of his attorney, the result of Talley's criminal proceeding would have been different and more favorable to Talley. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 693-94; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 270-71; *Carter*, 218 F.3d at 591; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result." *Strickland*, 466 U.S. at 686.

### B. Interview, Subpoena, and Call Witnesses to Testify at Trial

Talley contends McClary was ineffective by not interviewing, issuing subpoenas for, and calling the following persons to testify at trial: Louise Timmons, Tonya Kelley, Rodeaner Foster, Kathy Ray, Brenda Carter, Brenda Kelley, Anita Evans, Kima Evans, Michael Evans, Cory Evans, Kelcey Kendrick, Ladarryl Hemphill, Lafayette Faust, Rafael Faust, Lonnie Kelley, Luther Roberson, Michael Clay, Tobias Pruitt, and Williejay Kaipo Kalaukoa.

With regard to Louise Timmons, Tonya Kelley, Rodeaner Foster, Kathy Ray, Brenda Carter, and Brenda Kelley, Talley contends these persons were employed by Talley at his restaurant and they could have provided testimony favorable to Talley concerning what they observed while working at the restaurant. Talley alleges these persons could have testified that they did not observe the criminal activity that government witnesses Summerrow, Torran Evans, and Sims testified had occurred at Talley's restaurant.

With regard to Anita Evans, Kima Evans, Michael Evans, and Cory Evans, Talley contends these persons were living with Talley at Talley's residence at different times during the conspiracy charged in Count 1. Talley contends that these persons could have provided testimony refuting the charge that he was a member of the Count 1 conspiracy. Talley asserts this is especially true with regard to Cory Evans who was named in the indictment as a coconspirator.

Talley also contends that co-defendants Cory Evans, Kendrick, Ladarryl Hemphill, Lafayette Faust, Lonnie Kelley, Luther Roberson, Michael Clay, Tobias Pruitt, and Williejay Kalaukoa each could have provided testimony at trial disputing Talley's involvement in the conspiracy charged in Count 1.

Talley makes a vague contention that even though McClary issued subpoenas to several unspecified witnesses for the trial, who were all presumably Talley's alleged coconspirators, McClary failed to call these witnesses to the stand to testify at trial.

In short, Talley argues that if McClary had interviewed and/or subpoenaed these witnesses to trial and if McClary had called these witnesses to testify, there is a probability or reasonable likelihood that McClary would have been able to prove Talley was not a member of the conspiracy charged in Count 1.

These arguments fail. Complaints of ineffective assistance of counsel based upon "uncalled witnesses" are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative. Talley's allegations about the substance of possible testimony that could have been offered by witnesses who were not called at trial must be viewed with great caution. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001); *United States v. Luciano*, 158 F.3d 655, 660 (2nd Cir. 1998); *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Lopez v. United States*, 2006 WL 2404048, * 24 (N.D. Ohio Aug. 18, 2006). To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, Talley must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different, more favorable result at trial. *Id.*; *Koetjo v. Stovall*, 2006 WL 2365132, * 6 (E.D. Mich. Aug. 15, 2006); *Malcum v. Burt*, 276 F. Supp.2d 664,

679 (E.D. Mich. 2003); *Dell v. Straub*, 194 F. Supp.2d 629, 650 (E.D. Mich. 2002); *United States ex rel. Jones v. Chrans*, 187 F. Supp.2d 993, 1009 (N.D. Ill.), *aff'd*, 49 Fed. Appx. 623 (7th Cir. 2002).

This Court concludes Talley cannot establish actual prejudice under the *Strickland* test. Talley cannot show that, but for McClary's alleged deficient performance, there is a reasonable probability the outcome of his trial would have been different and more favorable to Talley. As the government correctly points out in its response to the § 2255 motion, many of the individuals named by Talley as potential witnesses for his defense were co-defendants who had plea agreements and were cooperating with the government. Talley's mere hope that the persons he identifies could have aided in his defense is nothing more than rank speculation and conjecture. The presentence investigation report ("PSR") states that several of the witnesses including Cory Evans, Lonnie Kelley, Kelcey Kendrick, Ladarryl Hemphill, and Luther Roberson had admitted and reported conducting crack cocaine and cocaine hydrochloride transactions with Talley. [PSR ¶ 56]. The alleged failure by McClary to call witnesses to testify at trial who would have bolstered the government's case does not constitute ineffective assistance of counsel.

The Court will not grant any § 2255 relief to Talley or hold an evidentiary hearing based on the purported potential testimony of uncalled witnesses where Talley has not bothered to submit supporting affidavits from them. The burden is on Talley to show there is a genuine need for an evidentiary hearing and that he is entitled to relief under § 2255. At the very least, Talley is required to submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to Talley's defense. In the absence of sworn affidavits from the uncalled witnesses, the

Court cannot accept and rely on Talley's bare, conclusory allegations about what he believes the persons might have testified to at trial. Talley's speculation and conjecture about what proof the witnesses may have been able to contribute to his defense is insufficient to make a threshold showing that testimony from the uncalled witnesses would have substantially altered the outcome of the trial in Talley's favor. *Cockrell*, 720 F.2d at 1427.

Moreover, the decision whether to call a particular witness to testify at trial is a matter of trial strategy that falls within defense counsel's domain. As discussed *supra*, the Court's scrutiny of defense counsel's performance is highly deferential. McClary is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound trial strategy. *Nix*, 475 U.S. at 165; *Strickland*, 466 U.S. at 689-90; *Skaggs*, 235 F.3d at 268. Talley has not come forward with any probative proof, i.e. affidavits from uncalled witnesses, to rebut the presumption.

## C.      No Motions to Suppress Evidence

Talley next contends he was deprived of effective assistance of counsel when McClary did not make motions to suppress evidence seized from his residence during the execution of search warrants in September and December, 1993, and to suppress the government's use of court-authorized electronic surveillance and wiretaps to record Talley's telephone conversations.

For the reasons expressed by the government in its response to the § 2255 motion, this claim lacks merit. Talley fails to meet his burden of satisfying both elements of the *Strickland* test. The motions to suppress proposed by Talley would have been frivolous. Talley has not shown that McClary's performance was deficient and fell below an objective standard of reasonableness. McClary is not ineffective when he does not file motions to suppress that have no legitimate basis

in fact and law.  Talley cannot show that McClary's performance caused him to suffer actual prejudice.  Talley cannot demonstrate there is a reasonable probability that the outcome of the case would have been any different if McClary had filed frivolous motions to suppress evidence.

With regard to the state search warrant authorized in January 1993, Talley fails to show there is any valid reason why the evidence seized from his residence should have been suppressed.  There was sufficient probable cause to justify issuance of the search warrant.  A finding of probable cause does not require an actual showing of criminal activity, but rather requires only a fair probability or substantial chance of criminal activity.  *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983); *United States v. Harris*, 255 F.3d 288, 293 (6th Cir. 2001).  The affidavit supporting the application for search warrant stated that a reliable confidential informant had observed cocaine at Talley's residence within the last three days.  The affidavit also informed the state judge that the informant's information was reliable and had been corroborated based on an independent investigation conducted by police officer Jeff Baker.  As explained by Officer Baker at trial, his independent investigation included Baker's eyewitness account of the informant attempting to make a controlled purchase of crack cocaine from Talley and Baker's observation of Talley possessing crack cocaine.  A motion to suppress challenging the January 1993 search warrant would have been denied by this Court.    Assuming *arguendo* that there was a lack of probable cause to issue the search warrant in January 1993, the search and seizure would have been upheld as valid anyway based on the good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897 (1984).  Evidence will not be excluded from trial if it is seized by the police acting in reasonable, good faith reliance on a search warrant issued by a judge or magistrate if the warrant is subsequently held to be defective.  *Id*. at 905; *Harris*, 255 F.3d at 293; *United States v. Van Shutters*, 163 F.3d 331, 337

(6th Cir. 1998); *United States v. Brown*, 147 F.3d 477, 484-85 (6th Cir. 1998). It was objectively reasonable for police officers to rely in good faith on the validity of the search warrant for Talley's residence. A reasonable, well trained police officer would not have known or believed that there was a lack of probable cause or that the search warrant was allegedly issued in violation of the Fourth Amendment. The affidavit applying for the January 1993 search warrant was not so lacking in indicia of probable cause as to render a police officer's belief in the existence of probable cause entirely unreasonable.

With regard to the execution of the December 1993 search warrant at Talley's residence, Talley does not articulate any factual or legal basis to support a viable motion to suppress the evidence seized. Talley does not contend that the affidavit supporting the application for search warrant was in any way defective or that there was a lack of probable cause. Rather, Talley only asserts that the evidence seized, approximately $760 in cash, was not incriminating and was typical of the amount of money that a restaurant owner like Talley would take home. This does not constitute a proper basis for McClary to file a motion to suppress the evidence seized in December 1993. It was a matter for the jury to decide whether the $750 seized was incriminating. Talley does not show there was any plausible basis to argue that the December 1993 search and seizure was unlawful.

Likewise Talley does not articulate a valid factual or legal basis to support a motion to suppress the evidence obtained against him as a result of the court-authorized electronic surveillance and wiretaps to record telephone conversations. None of the attorneys representing Talley's twelve co-defendants made motions to suppress this evidence. Talley makes a vague, conclusory argument that McClary is at fault for not challenging the electronic surveillance evidence on the ground that

other reasonable means existed to conduct the investigation and electronic surveillance was unnecessary. Talley does not bother to explain or allege any specific facts. He fails to cite any law to support his bare assertion.

18 U.S.C.§ 2518(1)(c) provides that each application for a court order authorizing or approving the interception of wire or electronic communications shall be made in writing upon oath or affirmation to a federal judge of competent jurisdiction and shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Section 2518(1)(c) is commonly known as the "necessity requirement." *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002). 18 U.S.C. § 2518(3)(c) provides that a federal judge may order electronic surveillance grant if the judge determines that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

Electronic surveillance and telephone wiretaps are not to be "used thoughtlessly or in a dragnet fashion." *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988). Wiretaps should not be routinely employed as the initial step in a criminal investigation. *United States v. Giordano*, 416 U.S. 505, 515 (1974); *Alfano*, 838 F.2d at 163; *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977). 18 U.S.C. § 2518(1)(c) and (3)(c) are designed to ensure that wiretaps are not resorted to in situations where traditional investigative techniques would suffice to expose the crime. *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974); *United States v. Quinones-Cedano*, 51 Fed. Appx. 558, 570 (6th Cir 2002); *Stewart*, 306 F.3d at 304; *Alfano*, 838 F.2d at 163; *Landmesser*, 553 F.2d at 19-20.

The Sixth Circuit has held that to obtain a court-authorized wiretap pursuant to 18 U.S.C.

§ 2518, the government is not required to prove that every other conceivable method of investigation has been tried and failed, or that all avenues of investigation have been completely exhausted. *Alfano*, 838 F.2d at 163. The purpose of the "necessity" requirement is "not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *Landmesser*, 553 F.2d at 20; *see also, United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000). Wiretapping is appropriate in drug trafficking conspiracy cases when the telephones are regularly utilized by coconspirators to conduct the criminal enterprise under investigation. *Stewart*, 306 F.3d at 304; *cf. Landmesser*, 553 F.2d at 20.

In Talley's case, the government's application for a court order authorizing and approving the interception of wire or electronic communications fully complied with 18 U.S.C. § 2518. The government's application satisfied the "necessity" requirement of 18 U.S.C. § 2518(1)(c). There was no valid ground for McClary to file a motion to suppress. McClary's conduct in not making a motions to suppress the wiretap evidence does not constitute ineffective assistance of counsel.

### D.    Counsel Did Not Initiate Plea Bargaining

Talley contends that McClary was ineffective because McClary, in the absence of a viable defense, failed to seek or solicit a plea bargain. Talley says McClary advised him that the government's case was weak and there was a strong chance Talley would prevail at trial. When the case got to trial, however, Talley contends he learned that McClary had not conducted adequate investigation and trial preparation. As a result, Talley says he went to trial without a viable defense. Talley asserts that McClary should have initiated negotiations for a plea bargain.

This claim fails. Talley has not met his burden of showing that McClary's legal

representation was deficient and unreasonable. Talley also has not met his burden of showing actual prejudice under the second prong of the *Strickland* test. Talley cannot show there is a reasonable probability that, but for McClary's conduct, the result of the criminal proceeding would have been different and more favorable to Talley. Where trial counsel's assistance is otherwise reasonably effective, defense counsel's alleged failure or refusal to initiate and solicit plea bargaining cannot constitute the basis for an ineffective assistance of counsel claim. *Custodio v. United States*, 945 F. Supp. 575, 579 (S.D.N.Y. 1996); *Spavento v. United States*, 939 F. Supp. 233, (S.D.N.Y. 1996), *aff'd*, 162 F.3d 1148 (2nd Cir. 1998).

Since Talley was acquitted by the jury on Count 2, it appears that McClary was at least correct in his professional judgment that the government had a relatively weak case on Count 2. After being convicted on Counts 1, 20 and 21 at trial, Talley argues in hindsight that McClary is at fault for not initiating negotiations for a plea bargain on terms more favorable than the jury's verdict. Talley's theory that McClary could have achieved a plea bargain more favorable than the jury's verdict is nothing more than conjecture, speculation, and wishful thinking.

Talley does not contend that he ever authorized or directed McClary to make an effort to solicit a plea bargain. Talley does not state that he would have executed a plea agreement, or that he would have pleaded guilty to any particular counts in the indictment. Talley does not bother to specify the terms of any plea bargain that would have been acceptable to him. Presumably, Talley in hindsight would have been interested in an extremely generous plea bargain that would have resulted in the government dismissing Counts 1 and 2 of the indictment. Talley offers no proof to show that the United States government would have been ready and willing to enter into such an extraordinary plea bargain on terms acceptable to Talley. The Court finds it is highly improbable

that the government would have ever executed a plea agreement whereby both Counts 1 and 2 of the indictment would have been dismissed.

Talley does not cite any relevant legal authority for the proposition that defense lawyers have an affirmative duty under the United States Constitution or other federal law to solicit plea bargain offers from prosecutors. This Court does not think it wise to attempt to create such a duty here. Generally, decisions whether to initiate plea bargaining with prosecutors are precisely the kind of strategic decisions which are best left to the sound discretion and professional judgment of defense counsel, and are beyond the Court's purview. *See e.g., Brown v. Doe*, 2 F.3d 1236, 1246 (2nd Cir. 1993 (Defense attorney's decision not to initiate plea bargaining could be considered reasonable strategy, and it is not necessary that a defendant have counsel who recommends pursuit of a plea bargain); *Beans v. Black*, 757 F.2d 933, 936-37 (8th Cir. 1985) (Defense counsel has no duty to initiate plea bargaining even though failure to do so in a particular case might be unreasonable); *United States v. Usma*, 1997 WL 458431, * 3 (N.D. Ill. July 29, 1997).

There is no showing that the alleged failure of McClary to initiate plea bargaining caused any actual prejudice to Talley's case. To establish the prejudice prong of the *Strickland* test, Talley is required to show that if his trial counsel, McClary, had initiated plea bargaining: (1) the government would have offered a plea bargain; and (2) there is a reasonable probability that Talley would have accepted the government's offer of a plea bargain. *Id.* The first part is entirely speculative. In the absence of any supporting proof, this Court has no way of knowing whether or not the government would have been interested in plea bargaining with Talley and McClary. It can reasonably be assumed, however, that the government was not interested since the government made no offer of a plea bargain to Talley.

The key problem for Talley is that regardless of whether he pleaded guilty to Count 1 or was convicted on Count 1 at trial, he faced a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A). There is nothing in the record to demonstrate that the government was ever prepared to dismiss Count 1 against Talley in a plea bargain. There was simply no advantage to Talley to plead guilty to Count 1 as part of plea bargain since he was facing a mandatory minimum life sentence. Consequently, the decision by Talley and McClary to go to trial on Count 1 in the hope of gaining a verdict of acquittal from the jury was a reasonable strategy. In short, a plea bargain with the government that would have resulted in the dismissal of Count 1 was not a realistic, viable option available to Talley and McClary.

### E.  Adequacy of Cross-Examination of Prosecution Witnesses at Trial

Talley next claims that McClary failed to conduct adequate cross-examination of certain government witnesses at trial. The government presented testimony from coconspirators and co-defendants Summerrow, Torran Evans, and Sims. Talleys makes a vague assertion that these three witnesses gave pretrial statements to law enforcement officers concerning their involvement with criminal drug trafficking. Talley contends that McClary failed to review and use these witness statements on cross-examination to impeach Summerrow, Torran Evans, and Sims.

This vague, conclusory claim fails. The Court finds that Talley has not satisfied either prong of the *Strickland* test. Talley has not established that McClary's performance was deficient and that McClary's conduct caused actual prejudice to Talley's case. Talley cannot show there is a reasonable probability that, but for McClary's conduct, the result of the trial would have been different and more favorable to Talley.

Talley does not identify which specific pretrial witness statements were not utilized by

McClary in cross-examination. Talley does not provide any details or documents to support his claim. He does not adequately explain how the pretrial witness statements would have substantially assisted his defense and would have resulted in a more favorable result at trial. There is no allegation by Talley that the pretrial statements of Summerrow, Torran Evans, and Sims were inconsistent with their trial testimony. Rather, Talley contends that the pretrial witness statements could have been used by McClary on cross-examination to show that Summerrow, Torran Evans, and Sims used and/or trafficked in controlled substances including cocaine. However, this was not necessary because Summerrow, Torran Evans, and Sims testified at trial that they had been involved in using and/or trafficking in controlled substances. Consequently, the pretrial statements of these witnesses had little or no substantial impeachment value.

The trial transcript shows that McClary did conduct adequate, effective cross-examination of the government's witnesses. For example, Summerrow acknowledged on cross-examination that Talley never pooled money with co-defendants to purchase drugs, Talley did not direct or control their drug trafficking activities, and Talley only offered casual advice to them concerning drug dealing. Torran Evans testified on cross-examination that he had never witnessed Talley pooling any of his money with co-defendants to purchase drugs.

**F.**    **Lack of Expert Defense Witness on Voice Identification**

Talley claims that McClary failed to retain the services of an expert witness to refute the veracity or reliability of tape recorded telephone conversations introduced into evidence at trial through the testimony of FBI Special Agent Jackson. Jackson testified that Talley's voice was on the tape recordings and that the telephone conversations involved drug transactions. Talley points out that no samples of his voice were introduced at trial to prove that it was his voice on the

recordings. In short, Talley argues that McClary was ineffective by not arranging for a defense expert witness to testify at trial to dispute Jackson's testimony on these two points.

This claim fails. The Court finds that Talley has not satisfied either prong of the *Strickland* test. Talley has not established that McClary's performance was deficient and that McClary's conduct caused actual prejudice to Talley's case. Talley cannot show there is a reasonable probability that, but for McClary's conduct, the result of the trial would have been different and more favorable to Talley.

Talley does not contend that in fact it is not his voice on the recorded telephone conversations. Moreover, Talley does not does not provide any specific information about what an expert could testify to in his case. Talley's contention that McClary could have retained a qualified expert witness for the defense to refute Jackson's testimony is mere conjecture and speculation. Talley does not proffer a statement and expert opinion from a qualified expert witness stating that the voice on the tape recordings is not the voice of Talley and/or that the tape recorded telephone conversations do not involve criminal drug transactions. There is no proof offered to show that Talley and McClary could have ever obtained any such expert opinion from a qualified expert at the time of the trial. Even if we assume *arguendo* that McClary could have made arrangements for a qualified expert witness, Talley cannnot met his burden of showing there is a reasonable probability that such an expert opinion would have resulted in a better result for Talley at trial, i.e. acquittal.

G. **Variance in Proof on Count 1 Conspiracy Charge: Buyer-Seller Relationship**

Talley claims that McClary was ineffective because McClary failed to raise the argument that there was a variance between the proof at trial and the conspiracy charged in Count 1 of the indictment. Talley contends the evidence presented at trial was insufficient to prove the Count 1

conspiracy and did not establish anything more than a drug buyer-seller relationship between Talley and his alleged coconspirators. Talley claims that if McClary had adequately challenged this "variance in the proof" and he had pursued the argument that there was merely a buyer-seller relationship, then there is a strong possibility that Talley could have had the Count 1 conspiracy charge dismissed either at trial or on direct appeal. When Talley talks about a "variance" in the proof, he is essentially arguing that the evidence was insufficient to prove the Count 1 conspiracy.

This ineffective assistance of counsel claim fails. Talley has not met his burden of showing either prong of the *Strickland* test. Talley has not established that McClary's performance was deficient and unreasonable. Talley has not demonstrated that McClary's conduct caused actual prejudice to Talley's case. Talley cannot show there is a reasonable probability that, but for McClary's conduct, the result of the trial would have been different and more favorable to Talley.

To the extent that McClary could have made this particular argument at trial concerning the sufficiency of the evidence on Count 1, McClary did make a timely motion for acquittal under Fed. R. Crim. P. 29 at the close of the government's case which was denied.

There is not a reasonable probability that, if Talley's counsel had raised this particular argument, the result of the trial or the outcome of Talley's direct appeal would have been different and more favorable to Talley. There is not a reasonable probability that Talley would have prevailed on this argument. It is true the Sixth Circuit has held that a buyer-seller relationship is not alone sufficient to prove a drug-trafficking conspiracy. Mere isolated drug sales or purchases alone do not prove the existence of an agreement which an essential element for there to be a conspiracy. *United States v. Hereford,* 162 Fed. Appx. 439, 441 (6th Cir. 2006); *United States v. Franks,* 98 Fed. Appx. 483, 495 (6th Cir. 2004); *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003); *United*

*States v. Layne*, 192 F.3d 556, 568 (6th Cir. 1999); *United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996); *United States v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir. 1977). However, additional evidence beyond the mere purchase or sale of controlled substances from which knowledge of the conspiracy may be inferred may support a conspiracy conviction such as, for example, repeated drug purchases from the same source or large quantities of drugs. *United States v. Brown*, 332 F.3d at 373; *Layne*, 192 F.3d at 568; *Anderson*, 89 F.3d at 1310-11; *United States v. Baker*, 905 F.2d 1100, 1106 (7th Cir. 1990); *United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir. 1986).

The evidence at Talley's trial proved that he repeatedly bought, sold, and distributed crack cocaine with other members of the conspiracy. Talley was aware that he was selling crack cocaine to individuals who in turn sold and distributed the crack cocaine to other persons. Talley purchased crack cocaine for sale and distribution by and through his coconspirators.

For the government to prove a conspiracy, no formal or express agreement is required. The agreement may be inferred from the acts done in furtherance of the conspiracy. *United States v. Hitow*, 889 F.2d 1573, 1577 (6th Cir. 1989). Once the existence of a conspiracy is proved, only slight evidence is necessary to connect Talley with it. It is only necessary for the government to prove that Talley knew the object of the conspiracy, voluntarily associated himself with it, and knowingly contributed his efforts in furtherance of the conspiracy. *Id.*

The evidence at trial proved that Talley was a member of a drug chain conspiracy. In drug chain conspiracies, the conspiracy agreement can be inferred from the interdependent nature of the criminal enterprise. *Hitow*, 889 F.2d at 1577; *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982). It can be assumed that participants in a chain conspiracy understand that they are

participating in a joint criminal enterprise because success is ultimately dependent on the success of those persons from whom they buy drugs and to whom they sell. *Franks,* 98 Fed. Appx. at 495; *Hitow*, 889 F.2d at 1577; *Bourjaily*, 781 F.2d at 545. In a chain conspiracy, it is enough that each member of the conspiracy understands or realizes that he is participating in a joint enterprise, even if he does not know the identities of many of the participants. *Franks,* 98 Fed. Appx. at 495; *United States v. Odom*, 13 F.3d 949, 959 (6th Cir. 1994); *United States v. Paulino*, 935 F.2d 739, 748 (6th Cir. 1991).

A key element of a chain conspiracy is knowledge of a large operation. *Hitow*, 889 F.2d at 1577; *United States v. McLernon*, 746 F.2d 1098, 1107-08 (6th Cir. 1984). This element may be satisfied by proof of actual knowledge or proof of participation in a drug transaction from which such knowledge may be inferred. *Hitow*, 889 F.2d at 1577. Knowledge may be inferred from a large quantity of drugs involved in the conspiracy. *Id*.

The evidence established that Talley engaged in repeated purchases and sales of cocaine with other members of the conspiracy. Talley advised and counseled his coconspirators in ways to avoid detection by the police, and Talley warned them of the suspected presence of the police. Talley was not a street buyer or seller engaged in a discrete, isolated drug transaction with no knowledge of the existence of a larger conspiracy. The evidence demonstrated that Talley had knowledge he was involved and participating in an ongoing drug trafficking conspiracy of some dimension. *Cf. Anderson,* 89 F.3d at 1310-12. Accordingly, the Court concludes that evidence was sufficient to convict Talley on Count 1 and his ineffective assistance of counsel claim is frivolous.

### H.   Talley Did Not Testify at Trial

For the first time, Talley alleges in his § 2255 motion that McClary refused to allow him to

testify at trial despite Talley's request to do so.  It is claimed that had McClary allowed Talley to testify, there is a strong probability Talley would have been able to prove and convince the jury that he only had a buyer-seller relationship with his alleged coconspirators.

This claim fails.  Talley does not proffer any proof to substantiate his conclusory and belated self-serving statement that he asked to testify at trial but McClary refused to allow Talley to testify. During the trial, Talley never complained about this and he never expressed on the record any desire to testify.

A criminal defendant has a fundamental constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997). Talley does not allege that he was unaware of his right to testify.  Talley does not contend that McClary failed to consult with Talley about his decision whether or not to testify.  Talley does not allege that McClary intimidated, threatened, or otherwise improperly interfered with Talley's decision whether or not to testify.  Rather, Talley merely asserts that McClary "refused" to allow him to testify.  The Court interprets this to mean that McClary simply advised Talley not to take the witness stand.  This statement by Talley is insufficient in this § 2255 proceeding to show that McClary's performance was deficient.   Unaccompanied by threats or coercion, legal advice concerning the wisdom and trial strategy of exercising the defendant's right to testify does not infringe any constitutional right and does not constitute ineffective assistance of counsel. *Pagani-Gallego v. United States*, 76 Fed. Appx. 20, 23 (6th Cir. 2003); *Walker v. United States,* 238 F.3d 426 (Table, text in 2000 WL 1871681, * 2 (6th Cir. Dec. 11, 2000)); *Jeffries v. United States,* 234 F.3d 1268 (Table, text in 2000 WL 1679447 (6th Cir. Oct. 31, 2000)); *Pelzer v. United States,* 105 F.3d 659 (Table, text in 1997 WL 12125, * 2 (6th Cir. Jan. 13, 1997)); *High v. United States,* 106

F.3d 400 (Table, text in 1996 WL 742222 (6th Cir. Dec. 20, 1996)); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

Talley has not met the second prong of the *Strickland* test. Talley cannot show that he was prejudiced by the alleged deficient performance of McClary. Talley cannot show there is a reasonable probability that, but for McClary's advice and "refusal" to allow Talley to testify, the result of the trial would have been different and more favorable to Talley. No reasonable probability exists that Talley's testimony would have changed the outcome of the trial. A reasonable juror could have readily discounted Talley's proposed testimony in light of the strong evidence against Talley showing that he was a member of he Count 1 drug chain conspiracy, including the tape-recorded telephone conversations. *See Pagani-Gallego*, 76 Fed. Appx. at 24.

If McClary advised Talley not to testify, such advice was reasonable and constituted sound trial strategy. Assuming that Talley had testified, the jury could have been able to compare his voice to the voice on the tape-recorded telephone conversations. Moreover, the government could have impeached Talley's credibility with his record of felony drug convictions pursuant to Fed. R. Evid. 609. The jury would have learned that Talley had previously been convicted of various felony offenses, including selling and distributing cocaine on five occasions. The fact that Talley did not testify and the jury was not made aware of his prior felony drug convictions in all likelihood helped Talley to be acquitted by the jury on Count 2.

## I. <u>Jury Instructions</u>

Talley claims McClary was ineffective by in not requesting either a jury instruction concerning the law that a mere buyer-seller relationship is insufficient to prove a drug-trafficking conspiracy, or the "pattern jury instruction on material variance from the indictment." The Court

infers that Talley is referring to the Sixth Circuit Pattern Criminal Jury Instruction § 3.08, Multiple Conspiracies – Material Variance From The Indictment. Talley contends that if McClary had submitted requests for one or both of these jury instructions, there is a strong probability that the jury would have acquitted Talley on the conspiracy charged in Count 1.

This claim is without merit. Talley has not met his burden of showing either prong of the *Strickland* test. Talley has not established that McClary's performance was deficient and objectively unreasonable. Talley also has not demonstrated that McClary's conduct caused actual prejudice to Talley's case. Talley cannot show there is a reasonable probability that, but for McClary's conduct, the jury would have acquitted Talley on Count 1.

The Sixth Circuit Pattern Criminal Jury Instruction § 3.08, Multiple Conspiracies – Material Variance From The Indictment, is not applicable in Talley's case. It only applies to situations where the indictment charges a defendant with being the member of a specific conspiracy but the proof at trial shows that the defendant was a member of some other conspiracy and not the conspiracy charged in the indictment. This did not happen in Talley's case.

When Talley argues about a "variance in the proof," he is actually arguing that the evidence at trial was insufficient to prove he is guilty of the conspiracy charged in Count 1. Talley's argument is predicated on the false premise that the government only proved Talley had a mere drug buyer-seller relationship with his codefendants. As explained *supra*, this argument fails because the evidence at trial proved that Talley was a member of the Count 1 conspiracy and Talley had more than a mere buyer-seller relationship. It is important to note that McClary did make a motion for judgment of acquittal under Fed. R. Crim. P. 29 at the close of the government's proof which tested the sufficiency of the evidence.

Even if the evidence at trial supported at least giving a buyer-seller relationship instruction to the jury for its consideration, the evidence against Talley on the Count 1 conspiracy was strong. There is not a reasonable probability that the jury would have acquitted Talley on Count 1 if there had been a mere buyer-seller jury instruction.

The lack of a jury instruction with regard to a mere buyer-seller relationship did not deprive Talley of a fair trial and does not undermine confidence in the jury's verdict on Count 1. The Sixth Circuit has held that a buyer-seller jury instruction is unnecessary if the district judge gives a complete instruction reciting all the essential elements of conspiracy and requirements for membership in a conspiracy. *United States v. McMahan*, 129 Fed. Appx. 924, 931 (6th Cir. 2005); *United States v. Morris*, 47 Fed. Appx. 355, 360-61 (6th Cir. 2002);*United States v. Cook*, 13 Fed. Appx. 331, 337 (6th Cir. 2001); *United States v. Riggs*, 209 F.3d 828, 832 (6th Cir. 2000); *United States v. Stephens*, 492 F.2d 1367, 1377 (6th Cir. 1974). At Talley's trial, this District Court gave complete jury instructions reciting all the essential elements of conspiracy and requirements for membership in a conspiracy in accordance with then existing law and the applicable Sixth Circuit Pattern Criminal Jury Instructions.

**J.      McClary's License to Practice Law**

Talley claims that he was deprived of effective assistance of counsel based on the false premise that McClary did not have a valid license to practice law at the time of the trial in mid-September 1995. Talley says that after the trial was completed, he learned that McClary did not have a license to practice law.

This claim is frivolous. As discussed *supra*, the record clearly shows that Talley is mistaken. At the time of the trial, McClary was admitted to practice law in the United States District Court for

the Eastern District of Tennessee. Although the Supreme Court of Tennessee entered an order of temporary suspension on September 8, 1995, it did not disqualify and prohibit McClary from representing Talley at the federal trial.

Immediately before the trial commenced, Talley was present in the courtroom and heard the discussion between the District Judge and the attorneys concerning McClary's ability to proceed with representing Talley at the trial. Prior to commencement of the trial, Talley had notice and actual knowledge of the order of temporary suspension entered by the Supreme Court of Tennessee but Talley did not raise any objection to being represented by McClary. Talley did not request a continuance of the trial to afford him an opportunity to retain new counsel to replace McClary.

The temporary suspension of McClary's Tennessee state law license, by itself, does not mean that McClary was *per se* ineffective counsel. Regardless of whatever disciplinary action was taken against McClary by the Supreme Court of Tennessee concerning his Tennessee state law license, McClary was admitted to practice law in the United States District Court for the Eastern District of Tennessee at the time of Talley's trial.

## IV.    Claims of Ineffective Assistance of Counsel on Direct Appeal

McClary did not represent Talley on his direct appeal from the judgment of conviction to the Sixth Circuit. Instead, Talley's appellate counsel was Henry D. Fincher. *See Pruitt*, 156 F.3d 638.

Talley makes three claims of ineffective assistance of appellate counsel with regard to his direct appeal. First, Talley contends his appellate counsel failed to adequately raise and argue on appeal that Talley was not guilty on the Count 1 conspiracy because there was insufficient evidence to prove that Talley had anything more than a mere buyer-seller relationship with his co-defendants. Second, Talley contends his appellate counsel failed to raise an argument based on *United States v.*

*Winston*, 37 F.3d 235 (6th Cir. 1994), concerning how the buyer-seller relationship affected the aggregation of amounts of crack cocaine attributed to Talley for purposes of sentencing on the Count 1 conspiracy. Third, Talley contends his appellate counsel filed an inadequate brief with the Sixth Circuit. Talley makes a vague, conclusory allegation that the issues and arguments advanced by his appellate counsel were "insubstantial" and "unsupported by case law," with the exception of the argument on appeal that trial counsel (McClary) rendered ineffective assistance of counsel which the Sixth Circuit declined to decide.

This Court concludes that all of these ineffective assistance of appellate counsel claims fail. Talley has not met his burden of showing either prong of the *Strickland* test. Talley has not established that the performance of his appellate counsel was deficient and objectively unreasonable. Talley has not demonstrated that the conduct of his appellate counsel caused actual prejudice to Talley's appeal. Talley cannot show there is a reasonable probability that, but for his appellate counsel's alleged deficient conduct, the result of the appeal would have been different and more favorable to Talley.

Other than Talley's flawed and deficient argument about a mere buyer-seller relationship on the Count 1 conspiracy, Talley does not specify any relevant case law that his appellate counsel should have but failed to cite to the Sixth Circuit. Talley's vague, conclusory claim on this point fails to make a substantial showing of ineffective assistance of counsel. If, as Talley now claims, the brief filed in the Sixth Circuit by his appellate counsel was "insubstantial" and lacking in necessary, essential citations to case law, Talley has not demonstrated that it made any significant difference in the Sixth Circuit's deliberations. The decision rendered by the Sixth Circuit on Talley's direct appeal, *Pruitt*, 156 F.3d 638, clearly shows that the Sixth Circuit carefully analyzed

35

and exhaustively considered all of Talleys' arguments, including the issue concerning the aggregation of amounts of crack cocaine attributable to Talley on the Count 1 conspiracy and whether *Winston*, 37 F.3d 235, was applicable to Talley's case. The Sixth Circuit conducted its own independent legal research and obviously was not hindered by any purported shortcomings in the brief submitted by Talley's appellate counsel. Talley asserts that his appellate counsel was ineffective by failing to raise two interrelated issues on appeal: (1) that Talley was not guilty on the Count 1 conspiracy because there was insufficient evidence to prove Talley had anything more than a mere buyer-seller relationship with his co-defendants; and (2) that *Winston*, 37 F.3d 235, taken together with Talley's contention that he had a mere buyer-seller relationship, prohibited the aggregation of amounts of crack cocaine attributable to Talley for sentencing on the Count 1 conspiracy.

These claims by Talley do not amount to ineffective assistance by his appellate counsel. Even if appellate counsel had raised and presented these particular issues to the Sixth Circuit on direct appeal, there does not exist a reasonable probability that Talley would have prevailed on appeal and been able to get his judgment of conviction and sentence on Count 1 reversed.

When a criminal defendant takes a direct appeal from his judgment of conviction based on a claim of insufficient evidence, he faces a difficult, heavy burden. Evidence is sufficient to support a conviction and the Sixth Circuit will sustain a jury's verdict if, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Gardiner*, 463 F.3d 445, 456 (6th Cir. 2006); *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005); *United States v. Ware*, 282 F.3d 902, 905 (6th Cir. 2002); *United States v. Reed*, 167 F.3d

984, 992 (6th Cir. 1999); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992). The Sixth Circuit has held that it will reverse a judgment of conviction on the ground of insufficiency of evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole, and this rule applies regardless of whether the evidence is direct or entirely circumstantial. *Gardiner*, 463 F.3d at 456; *Beddow*, 957 F.2d at 1334; *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). It is not necessary for the evidence to exclude every reasonable hypothesis except that of the defendant's guilt. *Reed*, 167 F.3d at 992; *Beddow*, 957 F.2d at 1334; *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984).

Talley's argument that he was not guilty on Count 1 on the ground there was insufficient evidence to prove Talley had more than a mere buyer-seller relationship with his co-defendants is without merit. As explained *supra*, there was ample evidence presented at trial to support Talley's conviction on the Count 1 conspiracy. The government presented strong evidence that Talley was a member of the conspiracy charged in Count 1 and that Talley had more than a mere buyer-seller relationship with his co-defendants. Reviewing the evidence in the light most favorable to the government, any rational trier of fact could have easily found that all of the essential elements of the Count 1 conspiracy were proved against Talley beyond a reasonable doubt. Accordingly, Talley's appellate counsel was not ineffective by not raising this matter on appeal.

In this § 2255 proceeding, Talley seeks to conjure up and utilize his buyer-seller theory on Count 1 to revive or resurrect essentially the same argument that Talley unsuccessfully presented to the Sixth Circuit on his direct appeal predicated on *Winston*, 37 F.3d 235. This he cannot do. On the direct appeal, the Sixth Circuit considered and rejected Talley's argument that, based on *Winston*, it was improper for the District Court to aggregate the amounts of crack cocaine

attributable to Talley for sentencing on Count 1. *Pruitt*, 156 F.3d at 643-45. Talley cannot use a § 2255 motion to relitigate and rehash the same issue (i.e. *Winston* and the aggregation of amounts of crack cocaine attributable to Talley for sentencing on Count 1) which was fully considered and decided by the Sixth Circuit on Talley's direct appeal. *Wright*, 182 F.3d at 467; *Jones*, 178 F.3d at 796; *Oliver*, 90 F.3d at 180; *DuPon*t, 76 F.3d at 110-11.

## V.    Enhancement of Sentence Under 21 U.S.C. § 841(b)(1)(A) by Prior Convictions for Felony Drug Offenses

For the first time, Talley raises a claim that his sentence was unlawfully enhanced under 21 U.S.C. § 841(b)(1)(A) by using prior convictions for felony drug offenses sustained by Talley before October 12, 1984. The gist of Talley's argument is that prior convictions for felony drug offenses that occurred before October 12, 1984, cannot be used to enhance a sentence imposed pursuant to 21 U.S.C. § 841(b)(1)(A). Talley does not cite any relevant law to support his position.

The Court concludes that Talley's argument is frivolous. The plain language in 21 U.S.C. § 841(b)(1)(A) does not provide for any such time limit on prior convictions for felony drug offenses which may be used to trigger enhanced sentencing. There is no case law or other legal authority that places any such time limit on prior felony drug convictions as claimed by Talley. *See e.g., United States v. Hudacek*, 24 F.3d 143, 146 (11th Cir. 1994) (Twenty year old prior felony drug conviction qualifies to enhance sentence under 21 U.S.C. § 841(b)(1)(A) because statute places no time limit on prior felony drug convictions).

Even if we assume *arguendo* that October 12, 1984, is a cutoff date for prior felony drug convictions (which it is not), this would not afford any relief to Talley concerning the enhancement of his sentence on Count 1 under 21 U.S.C. § 841(b)(1)(A). In Talley's case, it is immaterial

whether October 12, 1984, is or is not a cutoff date for prior felony drug convictions. This Court properly enhanced Talley's sentence pursuant to 21 U.S.C. § 841(b)(1)(A) based on prior felony drug convictions that were entered against Talley in the Tennessee state courts in 1985 and 1986, after the purported cutoff date of October 12, 1984. The presentence investigation report on Talley states that on January 29, 1985, Talley was convicted in the Criminal Court of Hamilton County, Tennessee, on one charge of felony possession of marijuana and on two separate charges of feloniously selling cocaine. On October 31, 1986, Talley was convicted in the Criminal Court of Hamilton County, Tennessee, on three charges of feloniously selling cocaine. All of these prior felony drug convictions were based on Talley's pleas of guilty.

Accordingly, Talley's argument that he is entitled to relief under 28 U.S.C. § 2255 on the ground that his sentence was improperly enhanced under 21 U.S.C. § 841(b)(1)(A) using his prior felony drug convictions must be denied.

## VI. _Apprendi- Blakely-Booker_ Claim

Finally, Talley contends his judgment of conviction and sentence are unconstitutional because the indictment did not allege a specific quantity of cocaine base (crack) and the jury did not make a factual determination at trial regarding the quantity of cocaine base (crack) attributable to Talley using the standard of proof of beyond a reasonable doubt. Talley argues that the District Court committed error at sentencing by determining the quantity of cocaine base (crack) attributable to Talley by a preponderance of the evidence.

This claim fails. Talley is not entitled to relief under 28 U.S.C. § 2255 based on a retroactive application of _Apprendi_, 530 U.S. 466; _Blakely_, 542 U.S. 296; and _Booker_, 543 U.S. 220. When this District Court entered the judgment of conviction and sentenced Talley on December 12, 1995, the

Court complied with the then existing law in the Sixth Circuit governing the proper application of the United States Sentencing Guidelines and the determination of the quantity of crack cocaine attributable to Talley.

Any claim that Talley now has based on *Apprendi* and *Blakely* is governed by *Booker*. *Booker* extends and applies the reasoning in *Apprendi* and *Blakely* to the United States Sentencing Guidelines. In *Booker*, the Supreme Court reaffirmed its holding in *Apprendi* that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by either a guilty plea or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Booker*, 543 U.S. at 244.

*Booker* does not afford any collateral post-conviction relief to Talley in this 28 U.S.C. § 2255 proceeding. The opinion in *Booker* states that its holding should be applied to all cases then pending on direct review. *Booker*, 543 U.S. at 268. The *Booker* Court did not state that its holding should be applied retroactively on collateral review in federal criminal cases in which the judgment of conviction has already become final.

It is well settled in the Sixth Circuit that *Apprendi*, *Blakely*, and *Booker* cannot be applied retroactively to any motions for post-conviction relief brought by federal prisoners under 28 U.S.C. § 2255. *United States v. Cooper*, 168 Fed. Appx. 689 (6th Cir. 2006) (petition for writ of *certiorari* filed August 16, 2006) (No. 06-6111); *United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005); *Humphress*, 398 F.3d at 860-63; *Deaton v. United States*, 102 Fed. Appx. 457, 458 (6th Cir. 2004); *Regalado,* 334 F.3d at 526-27; *Ovalle v. United States,* 2002 WL 31379876 (6th Cir. Oct. 21, 2002); *Goode v. United States*, 305 F.3d 378, 382 (6th Cir. 2002); *see also, Gardner v. United States*, 2005 WL 1594567, * 1 (E.D. Tenn. July 6, 2005); *Tramble v. United States*, 2005 WL 1421618, * 1 (E.D.

Tenn. June 15, 1005).

Any application of *Apprendi*, *Blakely*, and *Booker* in the instant case involving Talley would be retroactive. Talley's judgment of conviction became final on March 8, 1999, when the Supreme Court denied his petition for writ of certiorari. *Talley*, 526 U.S. 1012. Talley's direct appeal had been dismissed and was not pending on direct review in any federal court when *Apprendi*, *Blakely*, and *Booker* were decided by the United States Supreme Court. *Apprendi*, 530 U.S. 466, was decided by the Supreme Court on June 26, 2000. The Supreme Court rendered its decision in *Blakely*, 542 U.S. 296, on June 24, 2004. *Booker*, 543 U.S. 220, was decided by the Supreme Court on January 12, 2005. In other words, *Apprendi*, *Blakely*, and *Booker* were all decided after Talley had fully exhausted his direct appeals and after Talley's judgment of conviction and sentence became final.

Accordingly, Talley's claim for collateral post-conviction relief under § 2255 predicated on an impermissible retroactive application of *Apprendi*, *Blakely*, and *Booker* must be denied.

## VII.    Conclusion

Talley's motion brought under 28 U.S.C. § 2255 will be **DENIED and DISMISSED WITH PREJUDICE**. The Court has reviewed this case pursuant to Rule 24(a) of the Federal Rules of Appellate Procedure and will certify that any appeal from this decision by Talley would not be taken in good faith and would be frivolous. Consequently, any application by Talley for leave to proceed on appeal *in forma pauperis* will be denied under Fed. R. App. P. 24(a).

Furthermore, should Talley timely file a notice of appeal it will will be treated as an application for a certificate of appealability which will be denied pursuant to 28 U.S.C. § 2253(c)(2) and Rule 22(b)(1) of the Federal Rules of Appellate Procedure. The Court finds that Talley has not made a substantial showing of the denial of a constitutional right. All of Talley's claims are clearly

without merit and he has not presented any claim or substantial question of law about which reasonable jurists could debate. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

A separate judgment will enter.

ENTER this the 27th day of November, 2006.


<u>        */s/    R. Allan Edgar*                </u>
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE